UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00577-FDW-DCK

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) LAW OFFICES OF CHRISTOPHER T. ) MAY, P.C. AND CHRISTOPHER T MAY, ) ) Defendants. ) | ORDER |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11), wherein Plaintiff moves this Court, pursuant to Federal Rules of Civil Procedure 56, to grant summary judgment in favor of Plaintiff as to all claims and counterclaims. Defendants did not file a substantive motion; however, pursuant to Fed. R. Civ. P. 56(f) they request favorable summary judgment in their response brief. (Doc. No. 13). For the reasons set forth below, Plaintiff's motion for Summary Judgment is GRANTED and Defendants' motion is DENIED.

I. **BACKGROUND**

Plaintiff initiated this action to resolve whether it has a duty to defend Defendants in an underlying action that alleges an insured member of a law firm violated the Driver's Privacy Protection Act. ("DPPA"), 18 U.S.C. § 2721 *et seq*. "The DPPA . . . bans disclosure, absent a driver's consent, of 'personal information,' *e.g.*, names, addresses, or telephone numbers, as well as 'highly restricted personal information,' *e.g.*, photographs, social security numbers, and medical or disability information." Maracich v. Spears, 570 U.S. 48, 48–49 (2013).

**A. The Parties and Policies**

1

Plaintiff, Nationwide Mutual Insurance Company is a corporation organized under the laws of Ohio with its principal place of business in Ohio. (Doc. No. 1, p. 2). Defendants include a North Carolina law firm and one of the attorneys with the firm. (Doc. No. 1, p. 2). From November 10, 2011, to November 10, 2017, Plaintiff issued businessowner liability insurance policies (collectively the "Policies") to Defendants. (Id. at 4). Coverage A of the Policies provides coverage for those sums that Defendants become legally obligated to pay as damages because of "bodily injury" and "property damage" occurring during the policy period caused by an "occurrence." (Doc. No. 1-4, p. 55).[1] The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. No. 12, p. 10). The Policies also define "property damage," in pertinent part, to mean, "[p]hysical injury to tangible property, including all resulting loss of use of that property . . ." and "[l]oss of use of tangible property that is not physically injured . . ." (Id.).

Coverage B of the Policies allows coverage for those sums that Defendants become legally obligated to pay as damages because of "personal and advertising injury." (Doc. No. 1-4, p. 72).[2] The Policies define "personal and advertising injury" as "injury, including consequential 'bodily injury,'"[3] arising out of one or more of the following offenses that occurred during the policy period:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

---

[1] Coverage A is the same for each policy. (Doc. No. 1-5, p. 65; Doc. No. 1-6, p. 65; Doc. No. 1-7, p. 67; Doc. No. 1-8, p. 71; Doc. No. 1-9, p. 62).
[2] Coverage B is the same for each policy. (Doc. No. 1-5, p. 72; Doc. No. 1-6, p. 72; Doc. No. 1-7, p. 74; Doc. No. 1-8, p. 78-9; Doc. No. 1-9, p. 69-70).
[3] Bodily injury is defined in the Policies for Coverage B in the same manner as it is defined under Coverage A.

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your 'advertisement'; or
g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

(Doc. No. 1, p. 4-5).[4]

The Policies also include exclusions applicable to Coverage A and Coverage B, and Plaintiff contends five exclusions bar coverage for Defendants. (See Doc. No 12). The Recording and Distribution of Material in Violation of Law exclusion (the "Exclusion") precludes coverage, including any duty to defend, for any "personal and advertising injury," defined as:

> Arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
> (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Doc. No. 1-4, p. 64).

The Policies also include an "Exclusion – Violation of Consumer Protection Statutes" Endorsement (the "Endorsement"), which precludes coverage for "personal and advertising

---

[4] Each policy contains the same exclusion (Doc. No. 1-5, p. 74; Doc. No. 1-6, p. 74; Doc. No. 1-7, p. 76; Doc. No. 1-8, p. 80; Doc. No. 1-9, p. 71).

3

injury," and defined nearly identical to the Exclusion. (Doc. No. 1-4, p. 89).[5] The only difference is the addition of the word "electronic" in section four: "[a]ny federal, state or local statute . . . that addresses, prohibits or limits the *electronic* printing . . . or distribution of material or information." (Id.) (emphasis added).

### B. The Underlying Hatch Suit and the Present Action

The relevant underlying action here, Johnathan Hatch, et al. v. Michael A. DeMayo, et al., Case No. 16-cv-00925 (M.D.N.C.) (the "Hatch suit"), asserted several defendants, including Defendants in this case, (collectively, the "Hatch Defendants"), violated the DPPA by accessing the underlying claimants' personal information from certain North Carolina motor vehicle accident reports, known as DMV-349 forms, and using personal information to send the claimants marketing materials for the Hatch Defendants' legal services. (Doc. No. 1-2, p. 23-4). Claimants Mark Dvorsky and Kelley Epperson (collectively, the "Claimants") further allege the Hatch Defendants knew the DMV-349 forms contained personal information from a motor vehicle record, but still "regularly and knowingly" obtained and used the personal information to market their services to Claimants. (Doc. No. 1-2, p. 20).

Claimants sought to represent a class of similarly situated claimants, (Doc. No. 1-2, pp. 20-23); however, the Middle District of North Carolina denied their motion for class certification.

---

[5] Each policy contains the Endorsement and a similar exclusion applies to the coverage for "bodily injury" and "property damage" in Coverage A. The full Endorsement bars coverage for "[p]ersonal and advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate:
(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the electronic printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."
(Doc. No. 1-5, p. 97; Doc. No. 1-6, p. 99; Doc No. 1-7, p. 106; Doc. No. 1-8, p. 106; Doc. No. 1-9, p. 97).

4

Hatch v. DeMayo, 2020 WL 4719632 (M.D.N.C. August 13, 2020). Further, the court issued a memorandum opinion and order finding the Hatch Defendants did not violate the DPPA when they obtained, disclosed, or used the personal information at issue. Hatch v. DeMayo, 2021 WL 231245 (M.D.N.C. January 22, 2021). Accordingly, the court granted the Hatch Defendants' motions for summary judgment filed by the Hatch Defendants. Id. Subsequently, the Claimants filed an appeal, which is currently pending before the Fourth Circuit Court of appeals. Plaintiff defended Defendants in the Hatch suit pursuant to a full reservation of rights, (Doc. No. 1-3), but now seeks judgment declaring there is no duty to defend or indemnify Defendants in connection with the Hatch suit. (Doc. No. 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The interpretation of an insurance policy, including the extent of the insurer's duty to defend and/or indemnify, is a question of law that is appropriately decided by dispositive motion. See Harleysville Mut. Ins. Co. v. Packer, 60 F.3d 1116, 1121 (4th Cir. 1995); N.C. Farm Bureau Mut. Ins. Co. v. Lanier Law Group, P.A., 861 S.E.2d 565, 570 (N.C. App. 2021); Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., S.E.2d 518, 522 (N.C. 1970).

## III. ANALYSIS

On October 20, 2020, Plaintiff filed its Complaint in the present action seeking a determination that no defense or indemnity is owed to Defendants in connection with the Hatch suit and entrance of judgment in its favor on all claims and counterclaims. (Doc. No. 1; Doc. No. 11, p. 2). On January 29, 2021, Defendants filed their Answer to Plaintiff's Complaint, along with

5

Counterclaims for breach of contract and declaratory relief. (Doc. No. 8). Plaintiff asserts the Policies dictate the duties to defend and indemnify Defendants are precluded because the allegations in the Hatch suit do not allege any of the three kinds of injuries covered by the Policies: "bodily injury," "property damage," or "personal and advertising injury." (Doc. No. 12).

Plaintiff further argues that even if the allegations in the Hatch suit were covered by the Policies, the duties to defend and indemnify are precluded because the allegations fit within the Exclusion. (Id.). Defendants, on the other hand, contend the Hatch suit does allege a covered claim for "bodily injury," "property damage," and "personal and advertising injury." (Doc. No. 13). Defendants further contend the Policies' exclusions do not apply. (Id.). The parties agree North Carolina law controls, and no genuine issues of material fact exist.

### A. Duty to Defend

Under North Carolina law, "[a]n insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings [of the underlying lawsuit] . . . . When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 340 S.E.2d 374, 377 (N.C. 1986); see also Firemen's Ins. Co. of Washington D.C. v. Glen-Tree Invs., LLC, 2012 WL 4191383, at *5 (E.D.N.C. Sept. 19, 2012) ("An insurer has a duty to defend when pleadings allege facts that impose upon an insured a liability covered by the policy."). "When a dispute arises regarding the duty to defend, the insured must initially show that the asserted facts arguably fall within the policy's coverage. If the insured meets this burden, then the insurer must show that the policy precludes coverage based on an exclusion." Pa. Nat. Mut. Cas. Ins. Co. v. Sharpe Images, Inc., 2012 WL 3962747, at *2 (W.D.N.C. Sept. 11, 2012) (citations

omitted).

The court compares the allegations of the underlying complaint with the terms of the policy to decide an insurer's duty to defend. See Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 692 S.E.2d 605, 610 (N.C. 2010) (citations omitted) ("[North Carolina courts] apply the 'comparison test,' reading the policies and the [underlying] complaint 'side-by-side . . . to determine whether the events as alleged are covered or excluded.'"). The Supreme Court of North Carolina has explained, "[i]n addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury." Id., at 611.

### a. Coverage A – "Bodily Injury" and "Property Damage"

Defendants bear the burden of proving the asserted facts in the Hatch suit fall within the Policies' coverage. Id. Thus, regarding Coverage A, Defendants must initially prove the definitions of "bodily injury" and "property damage" are satisfied. Id. Plaintiff contends Defendants cannot meet their burden of proving the allegations set forth in the Hatch suit fall within the definitions of "bodily injury" and "property damage" because the Hatch suit contains no allegations of bodily injury, sickness, or disease, as required by the Policies' definition thereof. (Doc. No. 1-2). Additionally, the underlying action contains no allegations of physical injury to or loss of use of tangible property, as required to satisfy the Policies' definition of "property damage." (Id.).

Defendants' strained response to this issue is a reference to the allegation in the Hatch suit that the underlying claimants "suffered damage to their respective privacy rights . . . when personal information from a motor vehicle record . . . was obtained, disclosed, or used by Defendants

7

without consent or permission." (Doc. No. 1-2, pp. 24–25). The harm alleged has nothing to do with bodily injury, sickness, disease, or physical injury or loss of use to tangible property, and instead relates solely to the rights protected by the DPPA. Defendants fail to cite any case law supporting the idea that the harm alleged could possibly be interpreted as "bodily injury" or "property damage," likely because none exists.

Based on the foregoing, this Court agrees with Plaintiff that no allegations in the Hatch suit can be construed as satisfying the definition of either "bodily injury" or "property damage." Indeed, violation of the DPPA is the only claim asserted in the underlying action. (Doc. No. 1-2). Consequently, the Court finds the relevant language of Coverage A is unambiguous, and Plaintiff does not owe a duty to defend in the Hatch suit under such coverage.

### b. Coverage B – "Personal and Advertising Injury"

Defendants also bear the burden of proving that the allegations set forth in the Hatch suit fall within the definition of "personal and advertising injury" in Coverage B of the Policies. Sharpe Images, 2012 WL 3962747, at *2. Like Coverage A, Plaintiff contends Defendants cannot meet their burden of proving that the Policies' definition of "personal and advertising injury" is satisfied by the allegations in the Hatch suit. (Doc. No. 12, pp. 16-17). The term "personal and advertising injury" in an insurance policy is not ambiguous. Harleysville Mut. Ins. Co., 692 S.E.2d at 614. Coverage for such an injury is only triggered where the underlying allegations against an insured arise out of one of the specifically enumerated offenses set forth in the Policies.[6] Id. Here, the

---

[6] Those offenses include: (a) false arrest, detention, imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication, in any manner, of material that slanders or libels a person or an organization or disparages a person's or organization's goods, products, or services; (e) oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising idea in your "advertisement;" or (g) infringing upon another's copyright, trade dress, or

8

parties' dispute relates only to the following enumerated offense: (e) oral or written publication, in any manner, of material that violates a person's right of privacy ("Offense E"). (Doc. No. 1-4, p. 74). In order to fall within Offense E, the underlying complaint must necessarily include a *publication* of material that *violates a right of privacy*. Id.

For the reasons set forth below, the allegations in the Hatch suit do not support a violation of a recognized right of privacy under North Carolina law. Therefore, the single cause of action in the Hatch suit, violation of the DPPA, does not fit within one of the offenses enumerated in the Policies' definition of "personal and advertising injury."

Even assuming the publication requirement is satisfied, Defendants' claim for coverage under Coverage B for "Personal and Advertising Injury" still fails because the allegations set forth in the Hatch suit do not support a violation of a recognized right of privacy under North Carolina law. (See Doc. No. 1-1). Defendants contend the Hatch suit should be construed as alleging a claim for violation of the right of privacy because, in their view, the suit states facts which would support a common law claim for violation of the right of privacy. (Doc. No. 13, pp. 11-13). However, the Fourth Circuit specifically rejected this assertion. See Hartford Cas. Ins. Co. v. Ted A. Greve & Assoc. PA, 742 F. Appx 738, 741 (4th Cir. 2018).

In Greve, the insurer sought to negate its duty to defend the insured law firm in a DPPA dispute; this was based, in part, on a policy exclusion for personal and advertising injury arising out of the violation of a person's right of privacy created by any state or federal act. Id. However, the policy exclusion would not apply if liability would have occurred even in the absence of a state or federal statute. Id. The law firm in Greve argued the exception to the exclusion should apply

---

slogan in your "advertisement." (See Doc. No. 1-4, p. 74; Doc. No. 1-5, p. 84; Doc. No. 1-6, p. 84; Doc. No. 1-7, p. 86; Doc. No. 1-8, p. 90; Doc. No. 1-9, p. 81).

9

because the firm would have faced liability for violating common law privacy rights, even in the absence of DPPA. Id. at 741.

The Fourth Circuit rejected the law firm's argument in Greve. The court first noted that North Carolina recognizes only two types of invasion-of-privacy torts: (1) intrusion upon a person's seclusion, solitude, or private affairs; and (2) appropriation of a person's name or likeness for commercial advantage. Id. The Fourth Circuit concluded the allegations in the underlying complaint could not be construed as a claim for intrusion upon seclusion because the accident reports at issue are public records under North Carolina law. Id. The court held the actions of obtaining information from public records to facilitate the mailing of legal advertisements were "unwelcome" but did not constitute an intrusion upon seclusion under North Carolina law." Id. at 741.

The Fourth Circuit also concluded the allegations in the underlying suit did not support the second type of privacy tort—appropriation of likeness. Id. The court noted, "[T]he gravaman of the underlying actions is that the defendants sought to advertise to the plaintiffs, not use the plaintiffs to advertise." Id. Applying Greve here, the Court concludes the facts supporting the two recognized common law privacy torts under North Carolina law are not alleged in the Hatch suit.

Based on the Fourth Circuit's analysis in Greve, a duty to defend cannot apply under the Policies here absent allegations of publication of material that falls within a tort of invasion of privacy. The claimants in the underlying Hatch suit have not asserted a claim for invasion of privacy, have not sought damages for invasion of privacy, and have not alleged facts to support a claim for the tort of invasion of privacy. Consequently, the underlying claimants have not alleged any of the torts enumerated in the definition of "personal and advertising injury."

The Court's conclusions as to the foregoing issues are dispositive of the duty to defend. As Defendants cannot establish that the definitions of "bodily injury," "property damage," or "personal and advertising injury" are satisfied by the underlying allegations, Plaintiff does not owe a duty to defend. Accordingly, Defendants have failed to meet their burden of bringing themselves into the language of either Coverage A or Coverage B of the Policies. See Hartford Cas. Ins. Co. v. Gelshenen, 801 F.Appx. 915, 917 (4th Cir. 2020) (citing Kubit v. MAG Mut. Ins. Co., 708 S.E.2d 138, 147 (N.C. App. 2011). "[T]he insured has the burden of bringing itself within the insuring language of the policy.") Moreover, even if Defendants had established one or more of the key definitions were satisfied, Plaintiff still would not owe a duty to defend because the Exclusion fully bars coverage.

### c. Recording and Distribution of Material in Violation of Law Exclusion

Plaintiff bears the burden of proving that any exclusions bar coverage. Sharpe Images, 2012 WL 3962747, at *2. The Exclusion bars coverage for "any federal . . . statute . . . that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." (See, e.g., Doc. No. 1-4, p. 89). Plaintiff contends this exclusion completely bars coverage because the Hatch suit arises out of the DPPA, a federal statute that prohibits or limits the collecting or recording of material or information. (Doc. No. 12, p. 24).[5] Similarly, Plaintiff asserts, if the Hatch suit is construed as seeking damages for publication of private information, this exclusion applies because the DPPA is a federal statute which, prohibits or limits the dissemination, sending, transmitting,

---

[5] The Court recognizes Plaintiff asserts the exclusions for Knowing Violation of Rights of Another, Expected and Intended, Access or Disclosure of Confidential or Personal Information, and Criminal Acts also preclude coverage to Defendants in this matter, but for the reasons below, the Court finds this exclusion dispositive

11

communicating, or distribution of material or information. (Id.).

Numerous cases applying North Carolina law have found the language set forth in the Exclusion bars coverage for DPPA claims such as those at issue here. See, e.g., Main Street America Assurance Co. v. Crumley Roberts, LLP, 2021 WL 1195804 (M.D.N.C. March 30, 2021) (holding that a similar exclusion barred coverage for the Hatch DPPA suit); Peerless Ins. Co. v. Law Offices of Jason E. Taylor P.C., 2020 WL 4370941 (W.D.N.C. July 8, 2020) (holding that a similar exclusion barred coverage for another DPPA suit); Hartford Cas. Ins. Co. v. Gelshenen, 387 F.Supp.3d 634, 641–642 (W.D.N.C. 2019) (holding that a similar exclusion barred coverage for another DPPA suit); Hartford Cas. Ins. Co. v. Ted A. Greve & Associates, P.A., 2017 WL 5557669 (W.D.N.C. November 17, 2017) (holding that a similar exclusion barred coverage for another DPPA suit). In light of the unambiguous policy language, the underlying allegations, and the wealth of authority upholding the Exclusion, the Court agrees with Plaintiff and finds the Exclusion bars coverage here.

Instead of addressing the applicability of the Recording and Distribution of Material in Violation of Law Exclusion to the case at bar, Defendants appear to contend this exclusion was deleted and replaced by the Endorsement. (Doc. No. 13, p. 17). However, review of the Endorsement does not support that contention. The Endorsement does not indicate that it deleted and replaced the Exclusion. Rather, the Endorsement notes that it is added to the policies. (See, e.g., Doc. 1-4, p. 89).[6] Thus, the Endorsement supplements, not supplants, the Exclusion, and both the Endorsement and Exclusion exist in the Policies. Even assuming the Endorsement superseded the Exclusion, the alleged claims in the Hatch suit are still within its grasp.

---

[6] (Doc. No. 1-5, p. 74; Doc. No. 1-6, p. 74; Doc. No. 1-7, p. 76; Doc. No. 1-8, p. 80; Doc. No. 1-9, p. 71).

12

Defendants contend the Endorsement and Exclusion do not apply because both do not expressly contain the word "use." (Doc. No. 13, p. 17). This argument is unpersuasive, as the both the Endorsement and the Exclusion includes the words "dissemination," "sending," "communicating," or "distribution," which are all forms of "use" of material or information. (Doc. No. 1-4, p. 89). Additionally, Defendants argue both the Endorsement and Exclusion do not apply because the word "obtain" is omitted. (Doc. No. 13, p. 17). Again, this argument is unavailing, since the mere obtainment of material or information would not be covered under the policies in the first place, and such obtainment does not qualify as publication of material that violates the right of privacy as defined in the Policies. (See, e.g., Doc. No. 1-4, p. 74).

Finally, Defendants erroneously assert the Endorsement does not apply because the allegations fail to characterize Defendants' acts as "electronic." (Doc. No. 13, p. 16-17). Defendants concede, "[The] violation of consumer protection statutes exclusion applies to statutes that 'address, prohibit or limit' the 'electronic printing, dissemination, disposal, transmitting, communicating or distribution of material or information.'" (Doc. No. 13, p. 16). Defendants confuse the test. The duties to defend is measured by the facts as alleged in the pleadings not the actual conduct. See Peerless Ins. Co., S.E.2d 374 at 377. Defendants' alleged conduct in the Hatch suit was the violation of the DPPA. (See Doc. No. 1-1). The DPPA imposes liability for personal information that has been obtained "from a motor vehicle record." See 18 U.S.C. § 2722(a). In turn, the statute defines a "motor vehicle record" as "*any record*" that pertains to a motor vehicle operator's permit. . . issued by a department of motor vehicles." 18 U.S.C. § 2725(1) (emphasis added). The statute applies to *all* records, electronic or otherwise. Thus, the DPPA falls within the Endorsements provisions because it is a statute that "addresses, prohibits or limits" electronic

13

printing.

For the reasons set forth above, the Policies are clear and unambiguous, and the omission of the words "use" or "obtain" in the Exclusion and the inclusion of "electronic" in the Endorsement are irrelevant to the analysis here. See Mizell, 530 S.E.2d at 95 ("[I]f the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written."). The Court recognizes Plaintiff asserts four exclusions apply but finds the above Exclusion dispositive and does not reach the remaining provisions.

### B. Duty to Indemnify

The Court now turns to the duty to indemnify under the Policies. Although it is well established that the duty to defend is broader than the duty to indemnify, such duties are distinct. See Westfield Ins. Co. v. Nautilus Ins. Co., 154 F. Supp. 3d 259, 271-71 (M.D.N.C. 2016). Further, if the duty to defend fails, so too does the duty to indemnify. See N.C. Farm Bureau Mut. Ins. Co. v. Phillips, 805 S.E.2d 362, 366 (N.C. App. 2017). However, "North Carolina law dictates that an insurer's duty to indemnify cannot be determined until the conclusion of the case, if necessary facts remain in dispute." Great W. Cas. Co. v. Packaging Corp. of Am., 444 F. Supp. 3d 664, 674 (M.D.N.C. 2020) (citing Harleysville Mut. Ins. Co., 692 S.E.2d at 611; see also Peerless Ins. Co. v. Innovative Textiles, Inc., No. 1-19-CV-362, 2020 WL 137303, at *2-3 (M.D.N.C. Jan. 13, 2020) (quoting Am. Auto. Ins. Co. v. Jacobs, No. 1:11-cv-00332, 2013 WL 2632602, at *2 (W.D.N.C. June 11, 2013) ("a dispute regarding an insurer's duty to indemnify is not ripe for decision until the underlying issue of liability has been adjudicated.").

In the Hatch suit, the court entered final judgment in favor of the Hatch Defendants. Hatch, 2021 WL 231245. Normally, judgment that does not impose liability would render the issue of

14

indemnity as moot. However, the Court recognizes the Hatch suit is pending appeal in the Fourth Circuit, and therefore, any declaration as to indemnification may be premature until the underlying claim is resolved on appeal. Am. Auto. Ins. Co. v. Jacobs, 2013 WL 2632602, at *2. Accordingly, the Court finds the issue of indemnification is not ripe and will dismiss the portion of Plaintiff's Complaint that seeks a declaration related to indemnification. This ruling is without prejudice to Plaintiff's ability to refile the action if, following appeal, the factual findings in the Hatch suit suggest coverage is appropriate. See Great W. Cas. Co., 444 F. Supp. 3d at 674 (finding the issue of indemnification was not sufficiently ripe and dismissing the case without prejudice); Am. Auto. Ins. Co. v. Jacobs, 2013 WL 2632602, at *2 (same).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is GRANTED IN PART and DISMISSED IN PART. Plaintiff's Motion is granted to the extent it seeks a declaration regarding the duty to defend under the Policies. Plaintiff's Motion is otherwise dismissed, in that Plaintiff's claim for a declaration regarding its duty to indemnify is hereby DISMISSED WITHOUT PREJUDICE. Defendants' request under Fed. R. Civ. P. 56(f) is DENIED.

The Court hereby DECLARES Plaintiff does not owe a duty to defend Defendants in connection with the Hatch suit.

IT IS SO ORDERED.

Signed: May 26, 2022

Frank D. Whitney
United States District Judge